Filed 9/22/16  Allen v. Bank of New York Mellon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MELITA ALLEN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BANK OF NEW YORK MELLON et al.,<br><br>    Defendants and Respondents. | H040615<br>(Santa Clara County<br>Super. Ct. No. 1-12-CV238575) |

In 2005, appellant Melita Allen obtained a $500,000 loan from First National Bank of Arizona to refinance her home.  Allen failed to make a payment in February 2009, and in September 2012 the property was sold at a nonjudicial foreclosure sale.  In 2013, Allen filed a first amended complaint against CWALT, Inc., and Bank of New York Mellon, formerly known as Bank of New York, as trustee for CWALT, Inc., Alternative Loan Trust, 2005-27 Mortgage Pass Through Certificates, Series 2005-27 (Bank of New York) alleging seven causes of action for (1) cancellation of written instruments, (2) wrongful foreclosure, (3) quasi-contract, (4) accounting, (5) slander of title, (6) violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), and (7) quiet title.  Shortly after filing her first amended complaint, Allen added Bank of America, N.A. (Bank of America), ReconTrust Company, N.A. (ReconTrust), Evergreen Mortgage Servicing, LP, and Mutual of Omaha Bank as additional

defendants.[1]  Bank of New York demurred to the first amended complaint.  Later, Bank of America and ReconTrust[2] also demurred to the first amended complaint.  The trial court sustained both demurrers without leave to amend and entered a final judgment dismissing the Bank defendants with prejudice.  Allen appealed.  For the reasons set forth below, we affirm the judgment.

BACKGROUND[3]

1. *The Loan and Default*

In May 2005, Allen obtained a $500,000 loan from First National Bank of Arizona to refinance her home in Santa Clara, which was secured by a deed of trust.  The deed of trust named First National Bank of Arizona as the lender, First American Title Company as the trustee, and MERS (Mortgage Electronic Registration Systems, Inc.) as the beneficiary and the nominee for the lender and its successors and assigns.  In February 2009, Allen failed to make her monthly payment on the loan.

2. *The Securitzation of the Loan and Foreclosure*

In May 2011, MERS executed an assignment of deed of trust (assignment) that was recorded in Santa Clara County.  MERS assigned its interest as the beneficiary under the deed of trust to the Bank of New York.  The assignment was signed by Swarupa Slee,

---

[1]Allen subsequently dismissed CWALT, Inc. and Mutual of Omaha Bank from the case.  Evergreen Mortgage Servicing, LP answered the first amended complaint and is not a part of this appeal.

[2] Collectively, we refer to Bank of New York, Bank of America, and ReconTrust as the Bank defendants.

[3] When reviewing a demurrer, " 'we accept as true the well-pleaded facts in [Allen's] complaint.' " (*Beacon Residential Community Assn. v. Skidmore*, *Owings & Merrill LLP* (2014) 59 Cal.4th 568, 571.)  "We may also consider matters that have been judicially noticed." (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)  Facts appearing in exhibits attached to the complaint are also accepted as true and are given precedence to the extent they contradict the allegations of the complaint. (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.)

2

acting as assistant secretary of MERS. Bank of America serviced the loan on behalf of Bank of New York. A true and correct copy of the original note from First American Title included on its last page an endorsement from First National Bank of Arizona to First National Bank of Nevada and an endorsement from First National Bank of Nevada to a division of Treasury Bank.[4]

In July 2011, MERS issued a substitution of trustee (substitution), substituting First American Title with ReconTrust. The substitution was signed by someone named T. Sevillano, an assistant secretary of MERS. Allen alleged that "T. Sevillano" was actually "Tina Sevillano," an employee of ReconTrust.

In July 2011, ReconTrust issued a notice of default and election to sell under deed of trust (notice of default). The notice of default asserted that Allen owed $83,804.23. Three months later, in October 2011, ReconTrust issued a notice of trustee's sale (notice of trustee's sale).

In September 2012, ReconTrust sold the property at a nonjudicial foreclosure sale. At the time, the amount of unpaid debt was $619,671.82. Bank of New York was the successful bidder at the nonjudicial foreclosure sale with a credit bid of $619,647.82.

In January 2013, Bank of New York recorded a quitclaim deed showing that Evergreen Mortgage Servicing purchased the property in December 2012.

3. *Allen's Complaint*

On December 28, 2012, Allen filed a complaint against CWALT, Inc. and Bank of New York. The complaint alleged seven causes of action for (1) declaratory relief, (2) accounting, (3) breach of implied covenant of good faith and dealing, (4) quasi-contract, (5) negligence, (6) wrongful foreclosure, and (7) constructive fraud.

---

[4] Part of the last endorsement from First National Bank of Nevada to the division of Treasury Bank is smudged and indecipherable. We are only able to discern that the note was endorsed from First National Bank of Nevada to a division of Treasury Bank.

3

Allen's complaint alleged that First National Bank of Arizona had transferred the note and deed of trust to its affiliate, First National Bank of Nevada, which in turn transferred the note and deed of trust to another undisclosed entity, CWALT, Inc., Alternative Loan Trust, 2005-27 Mortgage Pass Through Certificates, Series 2005-27 (REMIC Trust). Furthermore, the assignment of the trustee by MERS to Bank of New York was fraudulent. And the substitution of trustee to ReconTrust was fraudulent. Allen also alleged that there were defects with the notice of default and the notice of trustee sale.

The complaint also contained allegations regarding the securitization of the note and deed of trust. The complaint alleged that the deed of trust could not have been transferred into the REMIC Trust, because the closing date of the trust was November 1, 2005 and the deed of trust was transferred six years later in September 2011.

Allen alleged that tender was not required, because she had sufficiently pleaded facts to show that the sale was void.

For her first cause of action for declaratory relief, Allen sought a declaration that Bank of New York had no right or interest in Allen's loan, and the documents created by Bank of New York were defective, invalid, and void. For her second cause of action for an accounting, Allen sought assistance from the court to determine the true balance of the loan. For her third cause of action of the breach of the implied covenant of good faith and fair dealing, Allen alleged that First National Bank of Arizona breached its duty of good faith when it held itself out as a lender even after the note and the deed of trust had been sold to the undisclosed securitized trust. The fourth cause of action for quasi-contract claimed that Bank of New York had been unjustly enriched, because it had wrongfully foreclosed on the property and had accepted Allen's mortgage payments. The fifth cause of action for negligence asserted that Bank of New York owed Allen a duty of care and had negligently allowed Bank of America to find that she was in default and had negligently allowed ReconTrust to foreclose. The sixth cause of action for wrongful

4

foreclosure alleged that the deed of trust was improperly assigned and therefore invalid. The last cause of action for constructive fraud alleged that Bank of New York willfully and intentionally obscured the chain of title to Allen's property.

4. *Bank of New York's Demurrer*

Bank of New York demurred, addressing each of Allen's causes of action. Bank of New York argued that each of Allen's causes of action were insufficiently pleaded and suffered from fatal defects.

Bank of New York also filed a request for judicial notice, asking that the court take judicial notice of several publicly recorded documents relating to the loan: the substitution of trustee, the notice of trustee's sale, and the trustee's deed upon sale.

On May 24, 2013, the trial court sustained Bank of New York's demurrer with leave to amend.

5. *Allen's First Amended Complaint*

On July 12, 2013, Allen filed a first amended complaint against CWALT, Inc., and Bank of New York alleging seven causes of action for (1) cancellation of written instruments, (2) wrongful foreclosure, (3) quasi-contract, (4) accounting, (5) slander of title, (6) violation of the UCL, and (7) quiet title. Shortly after filing her first amended complaint, Allen added Bank of America, ReconTrust, Evergreen Mortgage Servicing, LP, and Mutual of Omaha Bank as additional defendants.[5]

Allen's cause of action for cancellation of written instruments alleged that the deed of trust and note did not identify the real parties to the transaction, rendering the instruments void. Additionally, Allen alleged that the assignment of the deed of trust was void, because the assignment was not executed by the correct party. Further, the deed of

---

[5] As previously noted, Allen dismissed CWALT, Inc. and Mutual of Omaha Bank from the case. Evergreen Mortgage Servicing, LP answered the first amended complaint and is not a part of the appeal.

5

trust could not have been transferred into the securitized trust, because the securitized trust closed in 2005.

Second, Allen's cause of action for wrongful foreclosure alleged that ReconTrust was not authorized to foreclose on the property because of the property's defective chain of title.

Third, the quasi-contract cause of action alleged that Bank of New York, First Bank of Arizona, and Bank of America were unjustly enriched when they accepted Allen's mortgage payments. Additionally, Bank of New York and ReconTrust were unjustly enriched when they sold Allen's property.

Fourth, the cause of action for accounting alleged that Allen required an accounting of all the money she paid on her account, including third party payments and insurance payments, so she could determine if any obligations remained. She alleged that the accounting was necessary so she could recover the money wrongfully paid on her account and tender the amount to the "real creditor less any setoffs."

Fifth, the cause of action for slander of title alleged that First National Bank of Arizona, MERS, Bank of America, ReconTrust, and Bank of New York clouded the property's title by recording the void documents in the property's chain of title including the deed of trust, the assignment of the deed of trust, and the substitution of trustee.

Sixth, the cause of action for violation of the UCL alleged that ReconTrust violated Civil Code section 2924 when it recorded the notice of default, notice of sale, and trustee's deed upon sale. Additionally, Allen alleged that Bank of America had violated Civil Code sections 1558 and 2924h and Penal Code section 115 when it recorded the void documents in the property's chain of title.

Lastly, the cause of action for quiet title asserted that Allen was entitled to a judicial declaration quieting title in her favor against any adverse claims against the property.

6

Allen attached eight exhibits to her verified complaint, including the documents in the property's chain of title that she alleged were void, such as the deed of trust, assignment of the deed of trust, notice of default, substitution of trustee, notice of trustee's sale, trustee's deed upon sale, and the quitclaim deed. She also included a true and correct copy of the original note from First American Title, which included the endorsements to the First National Bank of Nevada and a division of Treasury Bank.

6. *Bank of New York's Second Demurrer*

Bank of New York demurred. Its demurrer addressed each of Allen's causes of action and rejected them as insufficiently pleaded. In part, Bank of New York dismissed Allen's claims regarding the improper securitization of her loan. Again, Bank of New York requested judicial notice of several of the publicly recorded documents relating to the sale of the property, including the substitution of trustee, notice of trustee's sale, and trustee's deed upon sale.

7. *Allen's Opposition and Bank of New York's Reply*

Allen opposed Bank of New York's demurrer and request for judicial notice. She argued that Bank of New York was mischaracterizing her arguments and focusing on the securitization issue, which was not the crux of her complaint. Rather, Allen asserted that her primary allegations focused on the allegedly void documents relating to the property's sale, including the assignment and the substitution of trustee. Allen also argued that the court should not take judicial notice of the documents requested by Bank of New York, because the contents of the documents were disputed by the parties.

Bank of New York replied to Allen's opposition, arguing that Allen's opposition reinforced its position that its demurrer to Allen's complaint should be sustained without leave to amend.

8. *The Trial Court's Order*

On November 4, 2013, the trial court sustained Bank of New York's demurrer without leave to amend. It also granted Bank of New York's request for judicial notice.

7

In part, the court noted that Allen had failed to allege tender. Bank of New York was dismissed from the case with prejudice, and a final judgment of dismissal was entered. In January 2014, Allen timely appealed from this order.

9. *Bank of America and ReconTrust's Demurrer*

On December 9, 2013, Bank of America and ReconTrust demurred to Allen's first amended complaint, utilizing the same arguments advanced by Bank of New York. Bank of America also requested that the trial court take judicial notice of the same three publicly recorded documents. Allen opposed Bank of America and ReconTrust's demurrer and the request for judicial notice, utilizing in large part the same arguments she presented against Bank of New York. Bank of America and ReconTrust replied to Allen's opposition, attaching the trial court's earlier ruling sustaining Bank of New York's demurrer against Allen's first amended complaint.

On March 17, 2014, the trial court sustained Bank of America and ReconTrust's demurrer without leave to amend. The following month, the trial court entered a final judgment and dismissed the case with prejudice as to Bank of America and ReconTrust. Allen timely appealed.

**DISCUSSION**

On appeal, Allen argues the trial court erred when it sustained the Bank defendants' demurrers without leave to amend. Before we address the merits of Allen's claims, we briefly discuss the applicable standard of review.

1. *Standard of Review*

We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) The facts alleged in the pleading are deemed to be true, but contentions, deductions, and conclusions of law are not. (*Hill v. Roll Internat. Corp.* (2011) 195 Cal.App.4th 1295, 1300.) In addition to the complaint, we also may consider matters subject to judicial notice. (*Ibid.*) Facts that are

8

subject to judicial notice trump contrary allegations in the pleadings. (*Ibid*.) Facts appearing in exhibits attached to the complaint are also accepted as true and are given precedence to the extent they contradict the allegations. (*Dodd v. Citizens Bank of Costa Mesa*, *supra*, 222 Cal.App.3d at p. 1627.)

"When a demurrer is sustained without leave to amend, [we] must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, [we] will conclude that the trial court abused its discretion by denying the plaintiff leave to amend. [Citation.] The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect." (*Berg & Berg Enterprises*, *LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1035.)

2. *Bank Defendants' Request for Judicial Notice*

First, we consider Allen's argument that the court erroneously took judicial notice of disputed facts in publicly recorded documents submitted by the Bank defendants. The Bank defendants requested judicial notice of three documents related to the loan and the property's chain of title: the substitution of trustee, the notice of trustee's sale, and the trustee's deed upon sale. The substitution of trustee substituted ReconTrust for First American Title Company and was executed by T. Sevillano, assistant secretary of MERS. The notice of trustee's sale was recorded by ReconTrust. The trustee's deed upon sale was recorded by ReconTrust and granted Bank of New York title to the property.

We review the trial court's ruling on a request for judicial notice for an abuse of discretion. (*Evans v. California Trailer Court*, *Inc*. (1994) 28 Cal.App.4th 540, 549.) When considering a demurrer to a plaintiff's complaint, the trial court must accept as true all allegations that are properly pleaded. However, when ruling on a demurrer, "[a] court may take judicial notice of something that cannot reasonably be controverted, even if it negates an express allegation of the pleading." (*Poseidon Development*, *Inc. v. Woodland Lane Estates*, *LLC* (2007) 152 Cal.App.4th 1106, 1117 (*Poseidon*).) Evidence Code section 452, subdivisions (c) and (h) permit a court, in its discretion, to take judicial

9

notice of official acts of any state of the United States, and facts and propositions "that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." (*Id.*, subd. (h).)

Under these provisions, courts have routinely taken judicial notice of the existence of certain documents, such as publicly recorded real estate documents, when the authenticity of the document is not challenged. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264 (*Fontenot*), disapproved of on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 (*Yvanova*).) "The official act of recordation and the common use of a notary public in the execution of such documents assure their reliability, and the maintenance of the documents in the recorder's office makes their existence and text capable of ready confirmation, thereby placing such documents beyond reasonable dispute." (*Fontenot*, *supra*, at pp. 264-265.)

*Fontenot* noted that courts have also taken judicial notice of facts that can be deduced from these types of documents, not simply of their existence and recordation. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 265.) For example, in *Poseidon* the appellate court concluded that the trial court properly took judicial notice of an assignment of a deed of trust as well as its *legal effect*. (*Poseidon*, *supra*, 152 Cal.App.4th at p. 1118.) There, the parties did not dispute the validity of the assignment. The parties only disputed the legal effect of the assignment. *Poseidon* noted that the assignment's "legal effect could not be clearer" and was therefore "not reasonably subject to dispute." (*Ibid.*) Further, *Poseidon* opined that the argument that the "trial court erred in taking judicial notice of the *effect* of the First Assignment is comparable to saying that, while a court may take judicial notice of a judicial decision awarding damages, it may not take judicial notice that the effect of that decision is to make the prevailing party entitled to the damages awarded." (*Ibid.*)

Taking judicial notice of the legal effect of a document not subject to reasonable dispute—like in *Poseidon*—is different than taking judicial notice of the *facts* of the

10

document.  When courts take judicial notice of public records, they do not take judicial notice of the truth of the matters stated therein.  (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375.)  For example, in *Herrera*, the plaintiff disputed the veracity of recorded documents establishing the property's chain of title.  The substitution of trustee, a publicly recorded document, recited that JPMorgan Chase Bank, who was "the successor in interest to Washington Mutual Bank, successor in interest to Long Beach Mortgage Company," assigned all of its beneficial interests under the deed of trust to the bank defendant.  (*Ibid*., capitalization omitted.)  The *Herrera* court noted that the substitution of trustee's statement that JPMorgan Chase Bank was the successor in interest to Long Beach Mortgage Company through Washington Mutual Bank was hearsay and not the proper subject of judicial notice.  (*Ibid*.)  The defendants had not submitted any evidence to show that JPMorgan Chase Bank had a beneficial interest, and the truthfulness of the assignment was disputed by the parties.  (*Ibid*.)

Cases like *Herrera* and *Poseidon* illustrate that a court may take judicial notice of facts such as the document's existence, recordation, and its legal effect, provided that there is no genuine dispute regarding the document's authenticity.  (*Fontenot*, *supra*, 198 Cal.App.4th at p. 265.)

Allen maintains that the trial court here impermissibly took judicial notice of the substitution of trustee, notice of trustee's sale, and trustee's deed upon sale.  Allen attempts to analogize her case to *Herrera* by arguing that since she is disputing the validity of the assignments and the facts contained therein, judicial notice of these documents was improper.

Allen, however, is mistaken.  In *Herrera*, the statement in the substitution of trustee that was judicially noticed was reasonably subject to dispute, because the documents constituting the chain of title were incomplete and the statement at issue in the substitution of trustee constituted hearsay.  Here, the documents that make up the property's chain of title are complete.  And there is nothing improper with taking judicial

11

notice of the *legal effect* of these documents. Furthermore, despite her argument to the contrary, Allen does not dispute the authenticity of the documents. Rather, she appears to dispute the validity of the documents. Her arguments below and on appeal are that the documents could not have had a certain legal effect, because the parties that executed the documents were not the real owners or holders of the note and deed of trust.

Allen herself attached the deed of trust as an exhibit to her complaint. "For purposes of a demurrer, we accept as true both facts alleged in the text of the complaint and facts appearing in exhibit attached to it." (*Mead v. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 567.) The deed of trust specifically named First American Title Company as the trustee, and MERS as the nominee for the lender and a beneficiary under the deed of trust. The substitution of trustee reflects that MERS, as the beneficiary under the deed of trust, substituted ReconTrust as the new trustee. The notice of trustee's sale was subsequently noticed and recorded by ReconTrust, acting as the trustee. And the trustee's deed upon sale reflects that ReconTrust granted Bank of New York the property following the nonjudicial foreclosure sale.

As described in *Fontenot*, MERS's status as a beneficiary is *not* the type of fact that is reasonably subject to dispute, given that it was named the beneficiary under the deed of trust. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 266.) Similarly, the fact that ReconTrust was substituted as the trustee is *also* not reasonably subject to dispute. It is the *legal effect* of the substitution of trustee that was recorded. The same logic applies to the court taking judicial notice of the notice of trustee's sale and the trustee's deed upon sale. These are both legal documents and from them, the court may take judicial notice of the legal effect of those documents.

Allen, however, is correct to the extent that she argues the trial court may not take judicial notice of disputed facts. For example, the substitution of trustee was signed by a "T. Sevillano" acting as assistant secretary of MERS. Allen's complaint alleges that "T. Sevillano" is actually an employee at Bank of America, not MERS. Facts such as the

12

statement that "T. Sevillano" is an assistant secretary at MERS is, like the statement in the substitution of trustee contemplated in *Herrera*, hearsay and cannot be judicially noticed.

### 3. *The Nonjudicial Foreclosure Process*

Before we address the merits of Allen's arguments, we briefly review the principal parties involved with a deed of trust securing real property for a loan. There are three parties: the trustor (borrower), the beneficiary (lender), and the trustee. A trustee holds the power of sale. If a borrower defaults on the loan, the beneficiary can order the trustee to conduct a nonjudicial foreclosure sale. (*Yvanova*, *supra*, 62 Cal.4th at p. 926.)

"The trustee of a deed of trust is not a true trustee with fiduciary obligations, but acts merely as an agent for the borrower-trustor and lender-beneficiary. [Citations.] While it is the trustee who formally initiates the nonjudicial foreclosure, by recording first a notice of default and then a notice of sale, the trustee may take these steps only at the direction of the person or entity that currently holds the note and the beneficial interest under the deed of trust—the original beneficiary or its assignee—or that entity's agent. ([Civ. Code,] § 2924, subd. (a)(1) [notice of default may be filed for record only by '[t]he trustee, mortgagee, or beneficiary'] . . .)" (*Yvanova*, *supra*, 62 Cal.4th at p. 927.)

Generally, a borrower cannot raise objections to an assignment of a note or a deed of trust, because it is a negotiable instrument that the lender may sell without notice to the borrower. (*Yvanova*, *supra*, 62 Cal.4th at p. 927.) "The deed of trust, moreover, is inseparable from the note it secures, and follows it even without a separate assignment." (*Ibid.*) "A deed of trust may thus be assigned one or multiple times over the life of the loan it secures. But if the borrower defaults on the loan, only the current beneficiary may direct the trustee to undertake the nonjudicial foreclosure process." (*Id.* at pp. 927-928.)

4. *Wrongful Foreclosure*

Allen does not separately address each of her causes of action in her opening brief. Instead, she makes several generalized arguments pertaining to the validity of the deed of trust, assignment of the deed of trust, and substitution of the trustee. These arguments are pertinent to her cause of action for wrongful foreclosure, where she alleged that ReconTrust was not the proper trustee and was therefore not authorized under Civil Code section 2924 to sell the property. Allen also alleged that Bank of New York was not the true beneficiary, because it was never assigned the note and was therefore not the true lender and could not have submitted a credit bid under Civil Code section 2924h.

"The basic elements of a tort cause of action for wrongful foreclosure track the elements of an equitable cause of action to set aside a foreclosure sale. They are: '(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.' " (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408, quoting *Lona v. Citibank*, *N.A.* (2011) 202 Cal.App.4th 89, 104 (*Lona*).)

In part, Allen's cause of action for wrongful foreclosure is premised on her allegation that Bank of New York was not the true beneficiary that could initiate the foreclosure process. "A foreclosure initiated by one with no authority to do so is wrongful for purposes of such an action." (*Yvanova*, *supra*, 62 Cal.4th at p. 929.) Only the original beneficiary, or an assignee or agent of an assignee, is authorized to initiate the foreclosure process by instructing the trustee to take steps toward completing a nonjudicial foreclosure sale.

Whether Allen has standing to pursue a claim of wrongful foreclosure depends on whether she sufficiently alleged that the assignment of the deed of trust and note from

14

First National Bank of Arizona to Bank of New York was void. In *Yvanova*, our Supreme Court concluded that "a home loan borrower has standing to claim a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust was not merely voidable but void, depriving the foreclosing party of any legitimate authority to order a trustee's sale." (*Yvanova*, *supra*, 62 Cal.4th at pp. 942-943.)

There are differences between void and voidable contracts. A void contract is one without legal effect. Void contracts are not binding, and are a " 'mere nullity.' " (*Yvanova*, *supra*, 62 Cal.4th at p. 929.) Void contracts cannot be validated by any party. (*Ibid*.) On the other hand, *voidable* contracts are ones where " 'one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.' [Citation.] It may be declared void but is not void in itself. [Citation.] Despite its defects, a voidable transaction, unlike a void one, is subject to ratification by the parties." (*Id.* at p. 930.)

First, Allen claims that she sufficiently alleged that the assignment from First Bank of Arizona to Bank of New York was *void*, not *voidable*. Allen alleged that Swarupa Slee executed the assignment while purporting to act as the assistant secretary of MERS. On information and belief, Allen further alleged that Slee "was not a duly authorized officer of MERS and lacked the authority to execute any documents on its behalf."

This conclusory allegation, however, is insufficient. A " ' "[p]laintiff may allege on information and belief any matters that are not within his personal knowledge, *if he has information leading him to believe that the allegations are true*" ' [citation], and thus a pleading made on information and belief is insufficient if it 'merely assert[s] the facts so alleged without alleging such information that "lead[s] [the plaintiff] to believe that the allegations are true." ' " (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192

15

Cal.App.4th 1149, 1158-1159.) The first amended complaint does not allege any facts that show why Allen believes that Slee lacked the authority to execute the agreement on MERS's behalf or why Allen believes that Slee is not employed by MERS.

In part, Allen alleges that Slee was not an employee of MERS, because she was an employee of Bank of America.[6] This allegation is insufficient. Even if Slee was a Bank of America employee, this would not automatically disqualify her from having the authority to execute the assignment on behalf of MERS. As acknowledged by the Ninth Circuit, "MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS." (*Cervantes v. Countrywide Home Loans*, *Inc.* (9th Cir. 2011) 656 F.3d 1034, 1040.) In other words, dual agency is to be anticipated, and we are unaware of any authority that dictates a requirement that an agent acting on behalf of MERS must be employed by MERS.

Furthermore, to the extent that the allegations regarding Slee's authority bear on whether the assignment was fraudulently obtained, Allen's allegations were not sufficiently specific to survive a demurrer. (See *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

Next, Allen argues that the assignment was void because the deed of trust was transferred late into a securitized trust that was governed by New York law and had closed in 2005. However, we find that an untimely assignment to a securitized trust made after the trust's closing date makes the assignment voidable, not void. (*Saterbak v. JPMorgan Chase Bank*, *N.A.* (2016) 245 Cal.App.4th 808, 815.)

As Allen notes, the appellate court in *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*) held to the contrary and found that an untimely assignment to

---

[6] The first amended complaint alleges that "the Assignment was executed and notarized by Bank of America, NA employees who lacked authority to effectuate the document."

16

a securitized trust made after the trust's closing date rendered the assignment *void*. (*Id*. at pp. 1096-1097.) In coming to this conclusion, *Glaski* cited *Wells Fargo Bank*, *N.A. v. Erobobo* (N.Y.Sup.Ct. 2013) 39 Misc.3d 1220(A). (*Glaski*, *supra*, at p. 1097.) *Erobobo*, however, has since been overturned (*Wells Fargo Bank*, *N.A. v. Erobobo* (N.Y.App.Div. 2015) 127 A.D.3d 1176, 1178) and criticized (*Rajamin v. Deutsche Bank Natl. Trust Co*. (2nd Cir. 2014) 757 F.3d 789, 788-789). We therefore do not believe that *Glaski*'s holding that late assignments are void is tenable.

Allen insists that the improper securitization of the deed of trust was only one of several arguments pertaining to the wrongful nature of the foreclosure. Allen maintains that her primary argument is that the assignment was void, because the note was "endorsed to an entity that was [a] division of Treasury Bank; neither [Bank of America], nor [First National Bank of Arizona] had an interest in the Note, and both [Bank of America] and [Bank of New York] knew that [Bank of New York] as Trustee of the CWALT Trust had not acquired an interest in Appellants Note." Allen argues that "Treasury Bank is not mentioned by the [Bank] defendants in any of the foreclosure documents . . . or title documents . . . ."

In other words, Allen insists the assignment of the deed of trust by MERS was ineffective, because the deed of trust follows the note that it secures, and the note was endorsed to a division of Treasury Bank. And, as Allen alleges, there is nothing to indicate what relationship MERS has with the true owner of the note after these successive assignments.

This argument is part of a series of contentions that targets aspects of the MERS system. "As described in *Mortgage Electronic Registration Systems v. Nebraska Dept. of Banking and Finance* (2005) 270 Neb. 529, MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the

17

promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records. [Citation.] [¶] Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust. [Citation.] Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender. This aspect of the system has come under attack in a number of state and federal decisions across the country, under a variety of legal theories. The decisions have generally, although by no means universally, found that the use of MERS does not invalidate a foreclosure sale that is otherwise substantively and procedurally proper." (*Fontenot*, *supra*, 198 Cal.App.4th at p. 267.)

Here, the deed of trust expressly provided that "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's *successors and assigns*. MERS is the beneficiary under this Security Instrument." (Italics added.) Later, the deed of trust also stated: "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's *successors and assigns*) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." (Italics added.)

In sum, Allen agreed that MERS had the right to exercise all interests and rights held by First National Bank of Arizona and its successors and assigns. Under the deed of trust, MERS, as nominee for First National Bank of Arizona's successors (which would include the division of Treasury Bank), MERS had the authority to assign the deed of trust. (See *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1505, disapproved of on another point in *Yvanova*, *supra*, 62 Cal.4th 919.)

Allen argues that notwithstanding MERS's authority to act on behalf of First National Bank of Arizona and its successors and assigns, MERS had to "subscribe the principal for whom it acts." As an initial matter, we note that Allen's complaint is unclear on this matter. In her cause of action for cancellation of written instruments, Allen vaguely alleged that neither the note nor the deed of trust identified the "real parties." Allen also alleges that the "Assignment [of the deed of trust] violates the Statute of Frauds in that MERS as an agent is attempting to convey an interest in real property in its own name, and not in the name of the principal rendering the instrument void on its face." Allen does not specifically allege that MERS failed to disclose the principal for whom it acted—presumably, either First National Bank of Arizona or its later assignees or successors.

The deed of trust, however, expressly states that MERS acts as the nominee on behalf of First National Bank of Arizona and its successors and assigns. To that end, it appears that MERS was acting on behalf of the principal for whom it acted as a nominee. Additionally, Allen does not provide citations to legal authority for the principle that unless MERS expressly states on *whose* authority it acts, its acts are void. Rather, Allen argues that California's statute of frauds (Civ. Code, § 1624) requires MERS to disclose its principal. Allen's argument is without merit. The statute of frauds merely requires that certain contracts must be in writing and subscribed "by the party to be charged or by the party's agent." (*Id*., subd. (a).) We do not see a requirement in the statute of frauds that MERS must "disclose its principal."

Allen cites to several cases to support her position that MERS "cannot merely execute an Assignment in its own name." First, Allen cites to *Estate of Stephens* (2002) 28 Cal.4th 665, 672, which states that an " '[a]n estate in real property . . . can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing.' "

19

Allen also relies on *McNear v. Petroleum Export Corp.* (1929) 208 Cal. 162. *McNear*, a case from 1929 that involved the enforceability of a telegram which read: " 'Smith of Petroleum Export says will fill order . . . .' [¶] 'W. K. Thompson.' " (*Id.* at p. 165.)  In *McNear*, the California Supreme Court concluded that the signature "W. K. Thompson" at the bottom of the telegram was "not a signature by the party to be charged or by his agent sufficient to satisfy the requirements of [the statute of frauds].  Thompson did not purport to sign as the agent of the defendant, and even if he had done so there was no offer of proof that he had written authority [to] do [so] ([Civ. Code, § 2309])." (*Id.* at p. 166.)

Contrary to Allen's arguments, *Estate of Stephens* and *McNear* merely reiterate that written authorization for an agent is mandated by law if the contract is required to be in writing.  (Civ. Code, § 2309.)  And here, written authorization was given.  The deed of trust specifically stated that MERS was the beneficiary under the deed of trust and was the nominee for the lender and its successors and assigns.

Additionally, it is well-established in California law that if an agent makes a contract in its own name without disclosing the principal, either the agent or the principal can be held liable for the contract.  (See *Sterling v. Taylor* (2007) 40 Cal.4th 757, 773 ["A contract made in the name of the agent may be enforced against an undisclosed principal, and extrinsic evidence is admissible to identify the principal."].)  We have not found a rule that expresses that a contract is void or voidable if the agent fails to disclose the principal for whom it acts.

Next, Allen maintains that MERS never possessed an interest in the note, and was only a nominee of the original lender and its successors and assigns under the *deed of trust*.  Therefore, MERS did not possess an independent ownership interest in the deed of trust or the note to convey to any other party.

We agree that MERS cannot, in of itself, assign the note on its own behalf. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 270.)  MERS, however, was the nominee of the

lender and its successors and assigns, and the extent of MERS's agency as the nominee must be determined by referencing the original agreement establishing its agency. (*Id.* at pp. 270-271.) As we previously discussed, the deed of trust held that "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests [granted by the Borrower], including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." Accordingly, the allegation that MERS did not possess an interest in the note is insufficient to invalidate MERS's ability to assign the note and deed of trust on behalf of the original lender and its successors and assigns.

Lastly, Allen insists that the note was endorsed several times and was therefore transferred first to First National Bank of Nevada and then to a division of Treasury Bank. Allen points out that the final assignment of the deed of trust by MERS did not reflect in any way that the note was owned by a division of Treasury Bank. Treasury Bank is also not mentioned in any of the other documents constituting the property's chain of title and effectuating the nonjudicial foreclosure sale.

We agree with Allen that "endorsement of the note by the payee was sufficient to transfer the deed of trust without other assignment." (*Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 291.) Furthermore, if the note was endorsed and transferred to another entity, the deed of trust follows without a separate assignment. (*Yvanova*, *supra*, 62 Cal.4th at p. 927.)

A promissory note, however, is a negotiable instrument that the lender may sell without notice to the borrower. (*Yvanova*, *supra*, 62 Cal.4th at p. 927.) And assignments of debt are often not recorded. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272.) Therefore, the endorsement of the note to several other entities prior to the assignment of the deed of trust to Bank of New York did not render it impossible for Bank of New York to have received a valid interest by way of the assignment executed by MERS. Allen would have

21

to sufficiently state that the assignment of the deed of trust to Bank of New York by MERS was invalid, which, as previously explained, she failed to do.

Allen maintains that she adequately pleaded that the original note was an illegal table-funded loan by alleging that First National Bank of Arizona did not, by itself, provide consideration for the contract.[7]  Since First National Bank of Arizona did not provide consideration, Allen alleges that the underlying note was void because it fails to identify the true parties to the contract in violation of Civil Code sections 1550 and 1558.  Civil Code section 1550 sets forth the essential elements of a contract, and Civil Code section 1558 provides that "[i]t is essential to the validity of the contract, not only that the parties should exist, but that it should be possible to identify them."

Assuming Allen's allegations are true, she still fails to validly state a claim that the underlying note is void.  Allen does not allege that she did not receive consideration for executing the note.  Rather, she alleges that First National Bank of Arizona did not provide its own consideration, because it received funds from certain hidden "Doe Investors" who are not readily discernible.  Civil Code section 1558, however, requires that it must be *possible* to identify the parties of the contract.  And Allen herself alleges that the identity of these "Doe Investors" can be "identified by a series of specific documents in the possession [of] defendants and/or their agents and those publically available."

Furthermore, Allen's allegation that First National Bank of Arizona did not provide consideration is contradicted by the exhibits attached to her complaint.  As the reviewing court, we will consider all evidentiary facts found in recitals or exhibits attached to the complaint, and if the facts appearing in the exhibits contradict those alleged in the complaint, the facts alleged in the exhibits take precedence.  (*Holland v.*

_____

[7] From Allen's opening brief, it appears that this table-funding theory is based on the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601(a)).

22

*Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447.) Here, the deed of trust and note specifically identify First National Bank of Arizona as the "lender."

Additionally, assuming that it is true that the hidden "Doe Investors" provided First National Bank of Arizona with the consideration to give to Allen (the $500,000), Allen does not cite to any authority that provides that when the lender (or "broker," as Allen characterizes First National Bank of Arizona's role) is disclosed, the "Doe Investors" must also be disclosed. Allen also does not cite to any authority that states that a contract becomes invalid if one party receives funds to give to the other party as consideration.[8] And although Allen characterizes the loan as an illegal table-funded loan that she claims has been banned in California since 1999, she does not cite to any authority for this proposition and does not provide any legal analysis on the issue.[9] Furthermore, an allegation that the loan is an illegal table-funded loan would be a conclusion of law that we are not bound to accept as true. (*Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 173 ["On demurrer, a court must accept properly pleaded facts as true, but a demurrer does not admit the plaintiff's contentions nor conclusions of law or fact."].)

Based on the foregoing, we find that Allen has failed to state sufficient allegations to find that the deed of trust, assignment of the deed of trust, and substitution of trustee were void. She therefore lacks standing to pursue this claim.

We also note that because Allen failed to validly state a claim that the documents in the property's chain of title were void, her claim of wrongful foreclosure must fail

_____

[8] Good consideration is defined as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise." (Civ. Code, § 1605.)

[9] In her opening brief, Allen cites to Civil Code section 3391, which lists certain exceptions to when specific performance can be enforced against a party to a contract.

because she did not allege tender. Typically, "as a condition precedent to an action by the borrower to set aside the trustee's sale on the ground that the sale is voidable because of the irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security. [Citations.] 'The rationale behind the rule is that if [the borrower] could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the [borrower].' " (*Lona*, *supra*, 202 Cal.App.4th at p. 112.) *Lona* described four exceptions to the tender requirement, one of which was if the borrower attacked the validity of the underlying debt. (*Id*. at pp. 112-113.) For example, if Allen validly stated a claim that the underlying deed of trust or assignment of the deed of trust was *void*, tender would be excused.

Here, however, we have already explained that Allen has failed to allege that the assignment was void. Allen was therefore required to allege tender, which she failed to do. Therefore, the absence of an allegation of tender is also fatal to Allen's cause of action for wrongful foreclosure.

5. *Cancellation of Written Instruments*

In her cause of action for cancellation of written instruments, Allen argues the documents in the property's chain of title must be canceled because they are void. We find that Allen fails to state a cause of action for cancellation of written instruments.

Under California law, a court may cancel a written instrument if it is void or voidable. (Civ. Code, § 3412 et seq.) Additionally, like in a cause of action for wrongful foreclosure, "[a] valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." (*Karlsen v. American Sav. & Loan Assn*. (1971) 15 Cal.App.3d 112, 117.) Again, Allen fails to allege that the challenged documents are void, which would have excused her from tendering. She also fails to allege tender. For these reasons, Allen fails to validly state a cause of action for cancellation of written instruments.

24

6. *Quiet Title*

Allen's cause of action for quiet title also rests on her arguments that the various documents in the property's chain of title are void. She claims that because of these void documents, the nonjudicial foreclosure sale was improper. Once more, we note that based on the allegations of the first amended complaint, Allen fails to allege that the documents in question were void. She has therefore failed to state a valid cause of action for quiet title.

Furthermore, Allen failed to allege tender. Generally, a borrower may not quiet title against a secured lender without first paying the outstanding debt on which the mortgage or deed of trust is based. (*Miller v. Provost* (1994) 26 Cal.App.4th 1703, 1707.) The cloud on the title remains until the debt is paid. (*Burns v. Hiatt* (1906) 149 Cal. 617, 620-622.) Therefore, in order to quiet title (and to obtain equitable relief to set aside the trustee's sale), the defaulted borrower must tender the full amount of the debt for which the property was security. (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 877-878.) There are exceptions to the tender requirement as described in *Lona*, *supra*, 202 Cal.App.4th at page 112. However, none of these exceptions are present here.

Additionally, a cause of action for quiet title establishes title against adverse claims. (Code Civ. Proc., § 760.020.) In other words, the parties seeking quiet title must themselves establish that they have some ownership or interest in the property. The property has since been sold at a foreclosure sale, and Allen no longer possesses an interest in the property. Absent sufficient allegations that the sale was void or voidable, Allen cannot quiet title. And we have already established that Allen failed to state a valid claim that the nonjudicial foreclosure sale was the result of void or voidable assignments.

7.  *Slander of Title*

Allen does not directly address her cause of action for slander of title on appeal. She mentions this cause of action briefly in her arguments, asserting that she has standing to pursue a cause of action for slander of title.

Even if we addressed her claim on the merits, however, it would fail.  Allen's cause of action for slander of title alleges that the notice of default, notice of trustee's sale, trustee's deed upon sale, substitution of trustee, and assignment of the deed of trust were all false.  A basic requirement of a cause of action for slander of title is that the plaintiff's publication be " '*without privilege* or justification.' "  (*Alpha & Omega Development*, *LP v*. *Whillock Contracting*, *Inc*. (2011) 200 Cal.App.4th 656, 664.) The challenged documents are all privileged under Civil Code section 2924, subdivision (d)(1) and the litigation privilege set forth under Civil Code section 47.

8.  *Violation of the UCL*

Allen also alleged that the Bank defendants had violated the UCL.  Like the slander of title cause of action, Allen only briefly mentions this cause of action in her briefs.

The UCL "creates ' "three varieties of unfair competition—acts or practices which are *unlawful*, or *unfair*, or *fraudulent*," ' " and the unlawful prong " ' " 'borrows' " ' " violations of other laws and makes them independently actionable under the UCL. (*Jenkins v*. *JPMorgan Chase Bank*, *N.A*. (2013) 216 Cal.App.4th 497, 520, disapproved of on another point in *Yvanova*, *supra*, 62 Cal.4th 919.)  In her first amended complaint, Allen alleges that the Bank defendants committed unlawful acts when they recorded the void assignments.  Therefore, to the extent this claim rests on the same alleged errors with the documents in the property's chain of title discussed above, it would fail because the underlying claims fail.  (*Price v*. *Starbucks Corp*. (2011) 192 Cal.App.4th 1136, 1147.)

9. *Remaining Causes of Action*

In her first amended complaint, Allen also alleged an accounting cause of action and a quasi-contract cause of action. Conspicuously, Allen does not mention these two causes of action in her opening brief, except in passing when she summarizes the first amended complaint. She does not make any claims pertaining to why the demurrer should not have been sustained as to these causes of action. We therefore find that she has waived any arguments pertaining to her causes of action for an accounting and for quasi-contract. (*Davies v. Sallie Mae, Inc.* (2008) 168 Cal.App.4th 1086, 1096 [" 'Although our review of a [demurrer] is de novo, it is limited to issues which have been adequately raised and supported in plaintiffs' brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned.' "].)

10. *Leave to Amend*

"In deciding whether the trial court abused its discretion in denying leave to amend, 'we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect.' " (*Fontenot, supra*, 198 Cal.App.4th at p. 274.)

Allen argues that leave to amend should be granted, because she would be able to amend her complaint to allege, on information and belief, that Slee signed the assignment of the deed of trust without personal knowledge of the facts. Allen, however, does not explain how an allegation that Slee lacked personal knowledge of the facts would render the assignment void, and she does not cite to any case law or authority for that proposition. Furthermore, to the extent that Allen's allegations are consistent with an allegation that Slee was a robo-signer, courts have consistently held that a plaintiff lacks standing to contest an assignment based on allegations of robo-signing. (See *Pratap v. Wells Fargo Bank, N.A.* (N.D.Cal. 2014) 63 F.Supp.3d 1101, 1109.) Any alleged defects

27

due to an allegation of robo-signing would render the assignment *voidable*, not void. (*Ibid.*)

Additionally, Allen argues that leave to amend should also be granted, because she can allege that the promissory note was endorsed to First National Bank of Nevada, and then endorsed to a division of Treasury Bank. As we explained before, however, an allegation that the note was endorsed to another entity does not render the later assignment void.

Based on the foregoing, we do not believe that Allen has met her burden to prove that an amendment could cure the defects with her complaint.

11. *Trial Court's Standard of Review on Demurrer*

Lastly, Allen argues that the trial court impermissibly transformed the demurrer into an evidentiary contest when it took judicial notice of the documents requested by the Bank defendants.

Allen is correct that "[o]n demurrer, a court must accept properly pleaded facts as true, but a demurrer does not admit the plaintiff's contentions nor conclusions of law or fact." (*Czajkowski v. Haskell & White, LLP*, *supra*, 208 Cal.App.4th at p. 173.) A court, however, must also consider evidentiary facts found in recitals or exhibits attached to the complaint, and if the facts appearing in the exhibits contradict those alleged in the complaint, the facts alleged in the exhibits take precedence. (*Holland v. Morse Diesel Internat., Inc.*, *supra*, 86 Cal.App.4th at p. 1447.) And when ruling on a demurrer, "[a] court may take judicial notice of something that cannot reasonably be controverted, even if it negates an express allegation of the pleading." (*Poseidon*, *supra*, 152 Cal.App.4th at p. 1117.)

As we previously explained, the trial court properly took judicial notice of the documents requested by the Bank defendants. Consideration of the *legal effect* of these documents was permissible and did not improperly transform the demurrer into an evidentiary contest.

28

**DISPOSITION**

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

_____
                        Premo, J.

WE CONCUR:


_____
        Rushing, P.J.



_____
        Grover, J.




Allen v. Bank of New York Mellon et al.
H040615